## HUGHES v. CAWTHORN.

*(Circuit Court, S. D. California. January 9, 1888.)*

BOUNDARIES—MONUMENTS—COURSES AND DISTANCES.

Where there are well-established monuments of a boundary, and the line run from the point of beginning by courses and distances does not conform to one of the natural calls, whereas by starting from the other point all the natural calls are answered, the first course and distance from the point of beginning must give way, especially when by following it the line is taken out in an open valley where there is no apparent reason for its frequent changes of course, but taken the other way it runs along the base of mountains, which render such changes necessary.[1]

At Law.

Ejectment to recover designated lots of land situated in Los Angeles county, Cal. Plaintiff relied upon the land being found to be within the boundaries of the Tujunga rancho; and defendant resisted plaintiff's claim on the theory that the land was public land of the United States, lying north of the northerly line of the rancho, according to the courses and distances given in the patent thereto.

*Wells, Van Dyke & Lee,* for plaintiff.

*Williams & McKinley,* for defendant.

ROSS, J. There is but a single question in this case, and that relates to the boundaries of the Rancho Tujunga, a Mexican grant, confirmed and patented by the government of the United States. At the trial it was conceded by the respective parties that if the land in controversy is to the south of the northerly line of the rancho, the plaintiff is entitled to recover; otherwise not. There is no dispute in respect to the starting point of the Tujunga, which is also the third station of the adjoining Rancho Ex-Mission of San Fernando, and is situated at the mouth of a canada on the south base of the San Fernando mountains. From this point of beginning, the line, according to the patent, runs along the base of the San Fernando mountains a given course and distance to a stake station; thence a certain other course and distance to a stake station; thence a certain other course and distance to a stake station; thence a certain other course and distance to a stake station; thence a certain other course and distance to a stake station; thence a certain other course and distance to a stake station on the south base of a mountain, opposite which point, it is declared, the Tujunga valley, bearing east and west, is about 50 chains wide; thence a certain other course and distance to a stake station; thence a certain other course and distance to "a sycamore six inches in diameter, marked 'T 8 station;'" thence "south 11° 45' east, eleven chains, to Tujunga creek, 20 links wide, course west, thirty-three chains to a stake station;" thence "south 47° 30' east, at seven chains, across a dry arroyo, 30 links wide, course west, thirty-seven

[1] That monuments govern courses and distances, see Beaubien v. Kellogg, (Mich.) 37 N. W. Rep. 691, and note.

chains, to a stake station;" thence "south 22° east ninety-six chains to a stake station;" thence "south 80° east, ninety-six chains, to a gray granite rock, eighteen inches long, twelve inches wide, and ten inches thick, station, on the south-west slope of a high mountain;" thence, etc. That there is a mistake somewhere in this description is admitted on both sides. If, commencing at the starting point, the line be run according to the courses and distances given, it will not follow the base of the San Fernando mountains, as in the patent it is declared to do, but so far deflects into the valley as that, when station 6 is reached, it is fixed at a point, not, as declared in the patent, on the south base of a mountain, but 18 chains therefrom in the valley, and within 100 feet of the Tujunga creek, and opposite which point the Tujunga valley, bearing east and west, is not, as stated in the patent, about 50 chains wide, but 35 chains only. Still following the courses and distances given in the patent, the line between stations 6 and 7 continues in the valley, crossing to the south of the creek, and between stations 7 and 8 crosses the same creek twice. As shown on the plat of the rancho annexed to the patent, and forming part of it, the line from station 6 to station 8 follows the mountains, and does not cross or touch the creek at all. In running from station 8 to station 9 the line, according to the description given in the patent, at 11 chains crosses the Tujunga creek course west, 20 links wide; and in running from station 9 to station 10, at seven chains crosses a dry arroyo 30 links wide; and the plat annexed to the patent so represents it. Continuing the courses and distances as given in the patent to station 12, that point is found, not as declared in the patent, on the south-west slope of a high mountain at a gray granite rock, but far out in the valley, about 18 chains, from a gray granite rock, which, according to the testimony in the case, is found on the south-west slope of a mountain, and which is one of the boundaries of the adjoining Rancho La Canada, and a point from which the adjacent government land was surveyed. Of the rock in question Lecouvreur, the surveyor who made the survey of the Rancho La Canada about the year 1873, said at the trial: "It was a very conspicuous rock, and it was naturally such as a surveyor would take as a boundary mark, because there were no large rocks to be seen there anywhere." The evidence shows that this rock has for many years been recognized by the people in the neighborhood as a common point in the boundaries of the Ranchos Tujunga and La Canada; and that it was so recognized by the government surveyors in making the survey of the government land in the vicinity, is beyond dispute. Norway, the United States deputy-surveyor who made the survey of the government land, testified on the trial of this case to the effect that, when he did so, which was a number of years ago, he ran from the gray granite rock in question back to station 11 of the Tujunga, and there found the old monument, and thus satisfied himself of the true location of the rock. But what to my mind conclusively establishes that the gray granite rock referred to in the evidence is the gray granite rock described in the patent, and at which station 12 of the Tujunga is thereby fixed, is that, by accepting that as station 12, and reversing the courses and distances, the line so

run answers all of the natural calls of the patent, and conforms to the plat of the survey therein embodied. It is true that at 11 chains to the south-east of station 8 as thus located the Tujunga creek is not now found, nor is there now at that station a sycamore tree; but the evidence shows that the Tujunga creek is a changeable stream, discharging in the rainy season tremendous volumes of water; and while it is, along the easterly line of the rancho, confined by the hills to somewhat narrow limits, yet, within those limits, it, like many other California streams that serve as an outlet for a large water-shed, often shifts. The stream of this year, therefore, may not be, and often is not, the stream of next. In traversing, by the reversed courses and distances given in the patent, between stations 9 and 8, the line strikes what is now a narrow alfalfa patch, which is just 11 chains south-east of station 8 as located by such reversed courses and distances, and which is lower than the present bed of the stream, and within the limits of the Tujunga canyon as defined by the hills. I am satisfied that this alfalfa patch was the bed of the Tujunga creek at the time of the government survey of the rancho. At station 8, as thus located, there is now no sycamore, but the evidence shows that it is located in one of a number of small canyons running northerly from the Tujunga canyon, in some of which, similar in all respects to that in which station 8 is thus located, sycamore trees are now standing and growing, and in some of which stumps of others that have been cut down are still standing. And two witnesses, whose veracity there is no reason to doubt, testified that during the trial of this case they went into the canyon in which by the reversed courses and distances from the gray granite rock station 8 is located, and about 100 yards below the point found some small limbs and branches of sycamore, some of which were partly imbedded in sand. They testified further that the limbs and branches did not have the appearance of having been put in position for a purpose. As it is a matter of common knowledge as well as one of evidence in the present case, that the cutting of wood in the mountains and canyons hereabouts is not uncommon, it is not unreasonable to conclude, if other circumstances sufficiently combine to locate station 8 in the canyon in question, that the sycamore called for in the patent at that station was subsequently cut down, and that the sycamore branches above referred to came from it. Continuing the reversed courses and distances from station 8, the line runs along the base of the mountains, as represented on the plat annexed to the patent, to station 6, which, as thus located, answers the calls of the patent almost exactly. Most of the witnesses who testified on the point testified, and a photograph of the premises introduced in evidence shows clearly, that section 6, as thus located, is at or near the base of a prominent mountain, which runs out from the range of mountains. While it is true that the base of a mountain is an indefinite call, yet, at the point now in question, there is a very narrow slope to the south—in width about 300 feet—between the mountain itself and a somewhat precipitous bluff, and opposite the point on this slope, where the reversed courses and distances locate station 6, the Tujunga valley, bearing east and west, is just 53 chains wide. I think,

therefore, that station 6, as thus located, well answers the call of the patent, which declares it to be "on the south base of a mountain, opposite which point the Tujunga valley, bearing east and west, is about 50 chains wide." Still following the reversed courses and distances, the line runs along the base of the San Fernando mountains to station 1. If, however, from station 1 the line be run in accordance with the course and distance given in the patent, it is found to terminate a number of chains to the north of the acknowledged point of beginning. But as that is a well-known and admitted point in the boundary, and as the gray granite rock is another point therein well, and, I think, thoroughly, established; and as the line run from the point of beginning in accordance with the courses and distances given does not conform to a single one of the natural calls, whereas, by going to the gray granite rock and reversing the courses and distances given, all of the natural calls are answered, the conclusion, I think, is clear that the mistake is in the first course and distance. But as the point of beginning is a known and conceded point, and station 1 is fixed by the reversed courses and distances from the granite rock, agreeing as they do with the natural calls, the course and distance between station 1 and the point of beginning must give way, and the line be closed by a straight line drawn between the two ascertained and known points. The fact that the mistake is in the first course and distance is further shown by the circumstance that, commencing at the point of beginning and following the course and distance given, the line does not, as the patent declares it does, run along the base of the San Fernando mountains, but runs into the open valley the distance given, and then, still in the open valley, a number of other and varying courses and distances, without any apparent reason for the frequent changes of course, resulting in locating station 6, not, as stated in the patent, on the south base of a mountain, but in the valley, and at a point opposite which the Tujunga valley is not, as declared in the patent, about 50 chains wide, but 35 chains only; whereas, by following the base of the mountains, as declared in the patent, the reason for the changes of course are obvious,—being caused by the meandering of the mountains,—and station 6 is so located as to answer almost exactly the patent call. The location of the ranch-house in the field-notes is only with respect to the west line of the rancho, concerning which no dispute arises.

My conclusion is that the land in controversy is within the true lines of the Tujunga patent, and, as a consequence, that plaintiff is entitled to judgment. It is so ordered.